NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| WINGATE INNS INTERNATIONAL, INC., | : : : : | |
| Plaintiff, | : : | Civil Action 11-6287 (ES) |
| v. | : : | |
| CYPRESS CENTRE HOTELS, LLC, et al., | : : : | OPINION |
| Defendants. | : : | |

**SALAS, DISTRICT JUDGE**

Pending before this Court is plaintiff Wingate Inns International, Inc.'s ("Plaintiff" or "Wingate") motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (D.E. 18, Plaintiff's Motion for Judgment on the Pleadings ("Pl. Mov. Br.")). The Court has jurisdiction under 28 U.S.C. § 1332. The Court decides the matter without oral argument under Federal Rule of Civil Procedure 78(b).

For the reasons set forth below, the Court GRANTS in part and DENIES in part Plaintiff's motion for judgment on the pleadings and dismisses defendant William Bost's counterclaim without prejudice.

**I.      Background**

      **A. Wingate's Complaint**

Wingate initiated this action against Defendants Cypress Centre Hotels, LLC ("Cypress"), William Bost ("Bost"), the Estate of James C. Hamilton ("Hamilton"), and Rajendra Patel ("R. Patel") (collectively, "Defendants") to, *inter alia*, collect sums allegedly due under a franchise agreement (the "Franchise Agreement"), a guaranty agreement (the "Guaranty"), and a promissory note (the "Development Advance Note"). (*See generally* D.E. 1, Complaint ("Compl.") ¶¶ 31-61).

Wingate alleges that, on or about March 31, 2004, it entered into the Franchise Agreement with Bhupen Patel and R. Patel for the operation of a guest lodging facility in Vicksburg, Mississippi. (*Id.* ¶ 11; Compl., Ex. A at 1). The Franchise Agreement provided that Bhupen Patel and R. Patel would be "eligible to participate in [Wingate's] Development Incentive Plan." (Compl., Ex. A ¶ 18.3). Pursuant to certain terms and conditions, this "Development Incentive" was a loan from Wingate in the amount of $250,000. (*Id.*). Although the parties did not provide the Court with the promissory note concerning this loan, the note is referenced in a later agreement and was evidently dated April 4, 2004. (Compl., Ex. D at 1).

On or about March 2, 2006, Wingate entered into an agreement with Cypress (the "Assignment and Assumption Agreement"), whereby Cypress allegedly assumed and accepted all rights and obligations pursuant to the Franchise Agreement. (Compl. ¶ 12; Compl., Ex. B at 2-3). The following parties signed the Assignment and Assumption Agreement: the vice president of franchise administration, Richard Saltzman, on behalf of Wingate; Bost on behalf of the assignee, Cypress; and R. Patel on behalf of the assignor, Bhupen Patel and R. Patel.

(Compl., Ex. B at 3). The Assignment and Assumption Agreement specifies that Bost owns 32.5% of Cypress and is a "[m]ember" of Cypress. (*Id.* at 3, 5).

Furthermore, as of the date of the Assignment and Assumption Agreement, Bost, Hamilton, and R. Patel provided Wingate with the Guaranty relating to Cypress's obligations under the Franchise Agreement. (Compl. ¶ 21; Compl., Ex. C at 6). Under the terms of the Guaranty, Bost, Hamilton, and R. Patel were "Guarantors" who, upon default by Cypress, would have to "immediately make each payment and perform or cause [Cypress] to perform, each obligation required of [Cypress] under the [Franchise] Agreement." (Compl., Ex. C at 6).[1] Notably, Bost signed the Guaranty and is identified as a guarantor on this agreement. (*Id.*).

On or about May 18, 2009, in connection with the Assignment and Assumption Agreement, Defendants signed the Development Advance Note. (Compl. ¶ 24; Compl., Ex. D at 1-2). The Development Advance Note was "issued pursuant to the [Franchise] Agreement dated March 31, 2004, assigned to and assumed by Maker pursuant to [the] Assignment and Assumption Agreement dated March 21, 2006." (Compl., Ex. D at 1).[2] Cypress is identified as the "Maker" and Bost, Hamilton, and Patel collectively as "Co-Makers." (*Id.*). Furthermore, the Development Advance Note "supersede[d] the Development Incentive Note dated April 4, 2004." (*Id.*). Under the terms of the Development Advance Note, Defendants promised to pay Wingate $178,000. (*Id.*).

---

[1] Although the Guaranty uses the language "Licensee" instead of a direct reference to Cypress, Bost himself substitutes Cypress for the term "Licensee" when referring to the Guaranty in his opposition to Plaintiff's motion for judgment on the pleadings. (Defendant William Bost's Opposition to Plaintiff's Motion for Judgment on the Pleadings ("Def. Opp. Br."), at 5).

[2] The Court notes that Wingate alleges that it entered into the Assignment and Assumption Agreement with Cypress on or about March 2, 2006. (Compl. ¶ 12). The Development Advance Note, however, suggests that the date of the Assignment and Assumption Agreement is dated March 21, 2006. (Compl., Ex. D at 1). The Development Advance Note also references an "Assumption of Development Advance dated March 2, 2006." (*Id.*). The parties do not address these differences, and the Court's disposition does not depend on this discrepancy.

Wingate alleges that, in or about January 2010, Cypress "relinquished control and lost possession" of the guest lodging facility. (Compl. ¶ 28). Wingate alleges that the Cypress, Bost, and R. Patel have failed to pay sums that are consequently due to Wingate. (*Id.* ¶¶ 29-30). Accordingly, Wingate pleads the following seven counts: five counts against Cypress relating to Cypress's obligations and liability under the Franchise Agreement, (Counts One to Five); one count against Bost, Hamilton, and R. Patel relating to their liability under the Guaranty, (Count Six); and one count against Cypress, Bost, and R. Patel relating to their liability under the Development Advance Note, (Count Seven).

Cypress has not answered or otherwise moved in response to Wingate's complaint, and the Clerk entered default against Cypress for failure to plead or otherwise defend. (*See* D.E. dated January 6, 2012). Wingate states that it "has not served [Hamilton] with the Complaint, and [R.] Patel filed for Chapter 13 bankruptcy on September 21, 2010." (Pl. Mov. Br. at 2). Bost, acting *pro se*, filed an answer and counterclaim. (D.E. 11, Answer ("Answer") and Counterclaim ("Counterclaim")). As detailed below, Bost's counterclaim is the subject of Wingate's motion for judgment on the pleadings. (Pl. Mov. Br. at 3).

### B. Bost's Counterclaim

In his counterclaim, Bost alleges that, before or around 2004, "Wingate [] or its predecessor . . . provided incomplete, misleading, and false information calculated to induce Bost and his associates to invest in a Wingate Inns franchise." (Counterclaim ¶ 2). Bost asserts that Wingate knew it "would be changing the franchised product so that instead of a Wingate Inn, built to a certain standard, [it] would require Bost and his associates to construct a Wingate by Windham Inn, built to a more exacting and expensive standard." (*Id.*). Bost alleges that

"Wingate knew that its promise of a marketing and advertising system[] was based on material and false information." (*Id.*). Indeed, Bost alleges that, "[a]fter May 2007 when Wingate was acquired by Windham Worldwide, the nature of the construction changed in significant ways . . . adding significant and unanticipated cost to the project." (*Id.* ¶ 6; *see also id.* ¶ 5 ("The construction project took way too long, in large part due to change orders mandated by Wingate.")).

Bost alleges that Wingate owed him "a duty to treat him fairly and with good faith," but that Wingate "violated these duties." (*Id.* ¶ 3). Bost alleges that a "material inducement to [him] becoming involved . . . was a promised Development Assistance Loan . . . from Wingate and an approved set of construction plans and specifications already in place." (*Id.*). Bost further alleges that, "[a]t the time that Wingate induced Bost to execute the [Guaranty] in March 2006, [Wingate] already knew that the brand had been sold to Windham and [Wingate] knew that Bost had been misled to guarantee obligations to Wingate when [Wingate] knew that [it] had no intention of permitting the construction of a hotel according to the [pre-approved] plans . . . ." (*Id.*). Bost alleges that "Wingate knew in advance of the change to the plans" and prevented the hotel from being "built in a cost effective manner so that it could compete in a normal economic environment." (*Id.* ¶ 6). Bost alleges that "[s]uch actions . . . amount[] to a violation of [Wingate's] duty of good faith." (*Id.*).

Bost alleges that he "was induced to guarantee a development assistance note . . . for $174,000 with assurances that this note would be funded after the hotel opened." (*Id.* ¶ 4).[3] But,

---

[3] The Court notes that the Development Advance Note is for $178,000. (Compl., Ex. D at 1). The parties do not address the discrepancy between this figure from the exhibit of the Development Advance Note, (*id.*), and Bost's counterclaim. Nor do the parties explain the difference, to the extent there is one, between the "Development

"[w]hen it came time to open the hotel," Bost alleges that Wingate "refused and required that Bost and Patel sign a new note." (*Id.*). He alleges that this "radical[] change" in the "scope and purpose of the DAN . . . seriously prejudiced Cypress['s] . . . ability to survive in the depressed commercial market it had opened into, and [this] amounts to a material breach of the franchise relationships and documents." (*Id.*). Bost accordingly alleges that he "was induced by Wingate to sign the new Development Note in May 2009 and the Guaranty in March 2006." (*Id.* ¶ 6). Bost alleges that, in December 2009, Cypress was "dissolved." (*Id.* ¶ 1).

Accordingly, in his counterclaim, Bost asserts that the "actions of [Wingate] as charged in this [c]ounter [c]laim amount to a willful and tortuous breach of the Franchise documents signed by Bost and Wingate." (*Id.* ¶ 7). Indeed, Bost alleges that Wingate's "conduct and misconduct . . . is a direct and proximate cause of the financial losses of [Bost] who has suffered losses of approximately $500,000.00 in this failed venture . . . ." (*Id.*).

**C. Wingate's Motion for Judgment on the Pleadings**

Wingate subsequently moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as to Bost's counterclaim. (Pl. Mov. Br. at 1; D.E. 24, Plaintiff's Reply Brief in Support of its Motion for Judgment on the Pleadings ("Pl. Reply Br.") at 1). As detailed below, Wingate argues that Bost lacks standing to assert his counterclaim. (Pl. Mov. Br. at 3-6). Wingate also argues that "Bost alleges 'breach of the Franchise documents signed by Bost and Wingate' without specifying which terms in these documents were breached." (Pl. Mov. Br. at 7 (quoting Counterclaim ¶ 7)). Wingate argues that Bost's counterclaim therefore fails to state a claim against Wingate under Federal Rule of Civil Procedure 12(b)(6), which uses the same

---

Assistance Loan ('DAN')," (Counterclaim ¶ 3), and the "development assistance note ('DAN')," (*id.* ¶ 4). Nevertheless, the Court's disposition does not depend on these discrepancies.

standard that is applied to a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Pl. Mov. Br. at 3).

Bost opposes Wingate's motion, arguing that he has standing, (D.E. 21, Defendant William Bost's Opposition to Plaintiff's Motion for Judgment on the Pleadings ("Def. Opp. Br."), at 10-17), and that he has stated viable claims for breach of contract, breach of the implied covenant of good faith, and fraudulent inducement, (*id.* at 17-30). Bost further argues that Wingate has acquiesced that standing exists as to Bost's viable fraudulent inducement claim, (*id.* at 28), and that Wingate is estopped from denying its contractual obligations to Bost under the promissory estoppel doctrine, (*id.* at 30-32).

The Court finds that Bost has standing to assert its counterclaim for breach of contract, but that Bost's counterclaim—as currently pleaded—is insufficient under Federal Rule of Civil Procedure 8(a) and therefore must be dismissed. Accordingly, the Court denies Wingate's motion to the extent it seeks dismissal for lack of standing, but grants Wingate's motion insofar as it seeks dismissal for failure to state a claim under Rule 8(a).

## II.     Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A Rule 12(b)(6) motion may be raised "by a motion under Rule 12(c)." Fed. R. Civ. P. 12(h)(2)(B). Rule 12(c) may thus serve as an "auxiliary or supplementary procedural device." 5 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 1367 (3d. ed. 1998).

Importantly, when considering such a Rule 12(c) motion, courts apply the same standard of review as for a Rule 12(b)(6) motion. *Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991); *Lapella v. City of Atlantic City*, No. 10-2454, 2012 WL 2952411, at *2 (D.N.J. July 18, 2012) ("[T]he differences between Rules 12(b)(6) and 12(c) are purely procedural, as the pleading standards of Rule 12(b)(6) are applied for both."). Furthermore, courts use the "same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as . . . a motion to dismiss a complaint." *RBC Bank (USA) v. Petrozzini*, No. 12-155, 2012 WL 1965370, at *2 (D.N.J. May 31, 2012); *see also Gross v. Best Plastics, LLC*, No. 10-1028, 2010 WL 5325915, at *8 (D.N.J. Dec. 17, 2010) ("Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim or counterclaim for failure to state a basis upon which relief can be granted."). Accordingly, the "plausibility standard imposed by Federal Rule of Civil Procedure 8(a) . . . applies to counterclaims . . . ." *Rocheux Int'l of N.J., Inc. v. U.S. Merchs. Fin. Grp., Inc.*, 741 F.Supp.2d 651, 661 (D.N.J. 2010).

To survive a motion to dismiss under Rule 12(b)(6), a counterclaim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A counterclaim must do so by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See id.*

Courts must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Indeed, a counterclaim "may not be dismissed merely because it appears unlikely that the [non-moving party] can prove those facts or will ultimately prevail on the

merits." *See id.* Moreover, courts must construe a pro se litigant's claims "liberally." *See Huertas v. Galaxy Asset Management*, 641 F.3d 28, 32 (3d Cir. 2011). The Court is not required, however, to accept "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III. Discussion

As an initial matter, the Court notes that deciding Wingate's motion requires consideration of documents outside the pleadings themselves, including the Franchise Agreement, the Development Advance Note, and the Guaranty. Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

Nevertheless, in deciding a motion to dismiss, the Court may consider exhibits attached to the complaint. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Thus, the Court need not treat Wingate's motion as a summary judgment motion because the Court relies only on the pleadings and the exhibits attached to Wingate's complaint. (*See* D.E. 1).[4]

### A. Bost's Standing to Assert a Counterclaim

Wingate argues that Bost lacks standing to assert a claim for breach of the Franchise Agreement for the following reasons. First, Wingate argues that, Bost is a guarantor and that a guarantor may not assert claims belonging to the obligor. (Pl. Mov. Br. at 3-4, 6; Pl. Reply Br. at

---

[4] The Court also notes that the parties do not dispute that New Jersey law applies in resolving Wingate's motion, and the Court accordingly applies New Jersey law to the extent that this Court must rely on state law to resolve Wingate's motion. *See Flaherty-Wiebel v. Morris, Downing & Sherred*, 384 F. App'x 173, 176 n.1 (3d Cir. 2010) (applying New Jersey law where the "parties agree[d] that New Jersey law applie[d] in . . . diversity action").

2-3).  Second, Wingate argues that, to bring an independent cause of action, guarantors must demonstrate that their injuries are separate from the injuries suffered by the principal and Bost has failed to do so.  (Pl. Mov. Br. at 4; Pl. Reply Br. at 3-4).  Third, Wingate contends that Bost cannot enforce the Franchise Agreement because he is not a party to the Franchise Agreement. (Pl. Mov. Br. at 3; Pl. Reply Br. at 1-2).  Finally, Wingate argues that Bost cannot claim standing as a third-party beneficiary to the Franchise Agreement because third-party beneficiaries are specifically disclaimed in the Franchise Agreement.  (Pl. Mov. Br. at 5).

In opposition, Bost argues that, here, two exceptions apply to the general rule that a guarantor is precluded from asserting a defense or counterclaim: (1) Cypress has "consented to Bost's assertion of its principal claim for breach of the Franchise Agreement"; and (2) Wingate joined both Cypress and Bost as codefendants in this action.  (Def. Opp Br. at 16).  Given these exceptions, Bost argues that he "has standing to pursue his [c]ounterclaim for breach of the Franchise Agreement against [Wingate]."  (*Id.*).

In response to Wingate's contention that Bost is not a party to the Franchise Agreement, Bost argues that the "express language of the 2009 [Development Advance Note] signifies that Bost, as Maker, is also an assignee of the Franchise Agreement."  (*Id.* at 13).  Bost therefore contends that he is a party to the Franchise Agreement and has standing to pursue his counterclaim for its breach.  (*Id.*).  Lastly, in response to Wingate's argument that Bost has not suffered distinct injuries, Bost argues that he has "sufficiently alleged that he has suffered personal monetary injuries separate and apart from the injuries sustained by Cypress for [Wingate's] breach of the Franchise Agreement."  (*Id.* at 17).

"The general rule is that 'a guarantor, when sued by the principal's creditor pursuant to a guaranty agreement, cannot rely on an independent cause of action existing in favor of the principal against the creditor as a defense or a counterclaim.'" *Travelodge Hotels, Inc. v. Elkins Motel Associates, Inc.*, No. 03-799, 2005 WL 2656676, at *14 (D.N.J. Oct. 18, 2005) (quoting *Continental Grp., Inc. v. Justice*, 536 F. Supp. 658, 661 (D. Del. 1982)); *see also Coldwell Banker Real Estate, LLC v. Plummer & Associates, Inc.*, No. 09-1313, 2009 WL 3230840, at *2 (D.N.J. Oct. 2, 2009) ("[I]t is the general rule that a guarantor may not assert a cause of action belonging to the principal against the principal's creditor . . . .").

Nevertheless, a guarantor may assert the principal's claims in the following three circumstances: "(1) the surety has taken an assignment of the claim or the principal has consented to the surety's use of the claim, (2) both principal and surety are joined as defendants, or (3) the principal is insolvent." *Coldwell Banker Real Estate*, 2009 WL 3230840, at *2 (internal quotations omitted). In *Coldwell Banker Real Estate*, for instance, the plaintiff moved to dismiss the guarantor defendant's counterclaim for lack of standing because the guarantor defendant was not a party to the two franchise agreements at issue. *Id.* at *2. The court, however, denied the plaintiff's motion to dismiss for lack of standing because the principal had consented to the guarantor defendant's claim and both the principal and guarantor were joined as defendants by the plaintiff. *Id.*; *see also Travelodge Hotels*, 2005 WL 2656676, at *14 (finding that guarantor defendant had standing to assert counterclaim against plaintiff because the principal and the guarantor defendant were joined as defendants); *Travelodge Hotels, Inc. v. SD Hospitality, Inc.*, No. 06-1736, 2007 WL 1892237, at *8 (D. Minn. June 25, 2007) (finding that

guarantor defendants had standing to assert counterclaims because principal and guarantors were joined as defendants).

Here, Wingate sued both Cypress and Bost. Thus, Bost has standing to assert Cypress's claims against Wingate. *See Coldwell Banker Real Estate*, 2009 WL 3230840, at *2 ("The guarantor may . . . assert the principal's claims . . . [where] both principal and surety are joined as defendants . . . .") (internal quotations omitted); *Travelodge Hotels*, 2005 WL 2656676, at *14 ("[O]ne exception to the general rule is when the principal and the guarantor are joined as Defendants. Such is the case here. Defendant . . . has standing to assert his counterclaims against the Plaintiff.") (internal citations omitted). Indeed, Wingate concedes that "this Court has found that when a guarantor and a principal are joined as defendants or the principal is insolvent, the guarantor *has* standing to assert counterclaims." (Pl. Mov. Br. at 5 (emphasis added)).

Nevertheless, Wingate contends that, "[e]ven in these situations, a guarantor's claim is only for set-off" and that "guarantors may not seek an 'affirmative recovery.'" (*Id.* at 5-6 (quoting *Continental Group*, 536 F. Supp. at 662)). In effect, Wingate assumes that Bost has no standing to assert a counterclaim because his counterclaim can only be for set-off. The Court finds that Wingate's assumption is unsupported. Rather, as noted above, exceptions to the guarantor rule provide standing for claimants like Bost notwithstanding any limitations to the particular relief the claimants may seek. *See Coldwell Banker Real Estate*, 2009 WL 3230840, at *2; *Travelodge Hotels*, 2005 WL 2656676, at *14; *Travelodge Hotels*, 2007 WL 1892237, at

\*8.[5]  Thus, the Court must deny Plaintiff's motion to the extent it seeks the dismissal of Bost's counterclaim for lack of standing.  *See Coldwell Banker Real Estate*, 2009 WL 3230840, at \*2 (denying Plaintiff's motion "insofar as it seeks dismissal of . . . the breach of contract . . . counterclaims brought by [the guarantor defendant] for lack of standing").

To be sure, in reaching this determination the Court need not address several issues raised by the parties' briefing.  First, the Court need not determine whether Bost is, in fact, a party to the Franchise Agreement or a third-party beneficiary to the Franchise Agreement because Bost correctly notes that "an exception applies that grants standing to a guarantor to assert a claim held by its principal" and "Bost [therefore] has standing to pursue his [c]ounterclaim for breach of the Franchise Agreement against Wingate."  (Def. Opp. Br. at 16); *see Coldwell Banker Real Estate*, 2009 WL 3230840, at \*2 (rejecting argument that guarantor defendant lacked standing to assert counterclaim because the defendant was not a party to the agreements-at-issue); *Travelodge Hotels*, 2007 WL 1892237, at \*8 (same).

Second, the Court need not reach the issue of whether Cypress consented to Bost asserting his counterclaim.  In arguing for an exception to the general guarantor rule, Bost asserts that Cypress "has consented to Bost's assertion of its principal claim for breach of the Franchise Agreement."  (Def. Opp. Br. at 16).  Bost, however, fails to cite any materials in support of this assertion.  (*Id.*).  Nevertheless, because Bost falls into another exception to the general guarantor rule, the Court need not address this issue.

---

[5] Furthermore, the Court rejects Wingate's invitation to dismiss Bost's counterclaim under Rule 12(b)(6) based on the particular relief he requests.  *See* 5 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d. ed. 1998) (explaining that for purposes of Rule 12(b)(6) "it need not appear that the plaintiff can obtain the particular relief prayed for in the complaint, as long as the district judge can ascertain from what has been alleged that some relief may be granted by the court").

Finally, the Court need not reach the issue of whether Bost's alleged injuries are separate and distinct from those of Cypress. Citing *Pepe v. Gen. Motors Acceptance Corp.*,[6] Wingate argues that a "shareholder or guarantor of a corporation cannot sue to recover personal losses sustained as a result of the destruction of a corporation." (Pl. Reply Br. at 3). Wingate argues that "Bost's claims are entirely derivative of the claims of Cypress and, must, therefore be dismissed." (*Id.* at 4). The Court, however, need not address whether Bost has alleged injuries that are separate and distinct from those of Cypress because, as discussed above, Bost is a guarantor that has standing to assert Cypress's claims.

### B. Sufficiency of Bost's Breach of Contract Claim

Wingate argues that "Bost alleges 'breach of the Franchise documents signed by Bost and Wingate' without specifying which terms in these documents were breached." (Pl. Mov. Br. at 7 (quoting Counterclaim ¶ 7)). Wingate also asserts that "Bost has not and cannot point to any term in either the Note or the Guaranty that creates an affirmative duty owed by [Wingate], let alone a duty that [Wingate] did not perform." (Pl. Mov. Br. at 7). In sum, Wingate argues that "Bost has not identified a single term in the Franchise Agreement, Note, or Guaranty that creates an affirmative duty owed by Wingate to Bost." (Pl. Reply Br. at 5).

In opposition, Bost argues that the Development Advance Note and Guaranty "cannot be read in a vacuum and without reference to the underlying contract, the Franchise Agreement." (Def. Opp. Br. at 18). Bost argues that "the Franchise Agreement, the 2009 [Development Advance Note], and the Guaranty are interrelated and essentially form a single transaction" such that these "three separate documents must be read and interpreted together as basically a single

---

[6] 604 A.2d 194, 196 (N.J. Super. Ct. App. Div. 1992).

contract." (*Id.* at 19). Bost identifies paragraph 18.3(a) in the Franchise Agreement that allegedly "states that Wingate would provide Cypress with Development Incentive funding." (*Id.*). Bost alleges that Wingate "was to supply these funds in accordance with the Franchise Agreement and the 2009 [Development Advance Note]." (*Id.*).

Bost also argues that Wingate breached the Guaranty by demanding payment from Bost when Cypress had not violated the Franchise Agreement. (*Id.*). Bost adds that he identified events in his counterclaim that "triggered application of the force majeure provision" of the Franchise Agreement and the force majeure provision "may apply to excuse Cypress from further performance on the contract, including any obligation to pay liquidated damages to [Wingate]." (*Id.* at 21). Thus, Bost argues that "it remains an open question as to whether Bost's payment obligations on the Guaranty ever arose so as to justify [Wingate's] actions" and that "it would be premature for the Court to determine at the pleading stage that [Wingate] did *not* commit a material breach of contract." (*Id.* at 22 (emphasis in original)).

Bost further argues that the reasonableness of the liquidated damages provision of the Franchise Agreement "cannot be measured by the pleadings alone." (*Id.* at 23). Bost asserts that "[i]f the liquidated damages provision in the Franchise Agreement amounts to an unenforceable penalty, then [Wingate] had no right to demand payment of those damages from Bost under the Guaranty." (*Id.*). Thus, Bost contends that the "issue as to whether [Wingate] breached the 2009 [Development Advance Note] and accompanying Guaranty cannot be resolved at this preliminary stage, and [Wingate's] motion for judgment on the pleadings must be denied." (*Id.* at 23-24). Finally, Bost argues that Wingate is estopped from denying its contractual obligations to Bost under the doctrine of promissory estoppel. (*Id.* at 30-32).

As an initial matter, a literal reading of Bost's counterclaim suggests that Bost only asserts a claim for breach of contract. Specifically, Bost asserts a single counterclaim in which he alleges the following: "The actions of [Wingate] *as charged in this [c]ounter [c]laim* [sic] amount to a willful and tortuous *breach* of the Franchise documents signed by Bost and Wingate." (Counterclaim ¶ 7 (emphasis added)). Even construing Bost's counterclaim liberally, as this Court must, Bost's single counterclaim indicates that he asserts breach of contract. *See Travelodge Hotels, Inc.*, 2005 WL 2656676, at *14 n.7 ("Although the Defendants['] Counterclaim suggests that the Defendants were fraudulently induced into signing the contract, a literal reading of the Counterclaim leads this Court to interpret the Counterclaim as one for breach of contract."). Thus, the Court does not address the sufficiency of Bost's purported claims for "breach of the implied covenant of good faith," (Def. Opp. Br. at 24-27), and "fraudulent inducement," (*id.* at 28-30).

As to the sufficiency of Bost's breach of contract claim, the Court finds that Bost fails to plead facts permitting the court to draw a reasonable inference that Wingate is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678. To plead breach of contract in New Jersey, a party must allege "(1) there was a contract; (2) that contract was breached; (3) the breach resulted in damages, and (4) the person suing for breach performed his own contractual duties." *Darush L.L.C. v. Macy's Inc.*, No. 12-2167, 2012 WL 2576358, at *2 (D.N.J. July 3, 2012) (citing *Wade v. Kessler Inst.*, 778 A.2d 580, 586 (N.J. Super. Ct. App. Div. 2001)). The party must also "identify the portions of the contract that were allegedly breached" to satisfy Federal Rule of Civil Procedure 8(a)(2). *Faistl v. Energy Plus Holdings, LLC*, No. 12-2879, 2012 WL 3835815, at *7-8 (D.N.J. Sept. 4, 2012).

Although Bost references several agreements in his counterclaim, including the Guaranty and the Development Advance Note, Bost fails to specify which agreement(s) that Wingate allegedly violated, much less specific contractual provisions.  (*See generally* Counterclaim). Thus, the Court cannot draw a reasonable inference that Wingate is liable for breach of contract without Bost identifying, in his counterclaim, the specific agreement(s) and related provision(s) therein that he is relying upon.  *See Faistl*, 2012 WL 3835815, at *7-8 (dismissing breach of contract claim where allegations failed to allege the particular contractual provision that was allegedly breached and there was ambiguity as to "which particular agreement even form[ed] the basis of [the] claim"); *see also Iwanicki v. Bay State Mill. Co.*, No. 11-1792, 2011 WL 6131956, at *4 (D.N.J. Dec. 7, 2011) ("Plaintiff has not identified the contract that was allegedly breached or the provisions of the contract that were allegedly breached. Without more information, Plaintiff's allegations are insufficient to sustain claims for breach of the implied covenant of good faith and fair dealing or breach of contract.").

To be sure, in his opposition brief, Bost references paragraph 18.3(a) of the Franchise Agreement.  (Def. Opp. Br. at 19).  Bost explains that, according to this provision, Wingate "was to supply . . . funds in accordance with the Franchise Agreement and the 2009 [Development Advance Note]."  (*Id.*).  The Court interprets these assertions to mean that Bost's breach of contract allegations involve paragraph 18.3(a) of the Franchise Agreement.  Nevertheless, such allegations are absent from Bost's counterclaim and Bost may not amend his counterclaim in his opposition brief to Wingate's motion to dismiss.  *See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

Furthermore, the Court need not address Bost's remaining arguments concerning the force majeure provision of the Franchise Agreement, the reasonableness of the liquidated damages provision of the Franchise Agreement, and promissory estoppel. These defenses do not address the sufficiency of Bost's counterclaim for breach of contract under Rule 8(a).

The Court recognizes that Bost is a *pro se* defendant and that it must construe his claim for relief "liberally." *See Huertas*, 641 F.3d at 32. Nevertheless, Bost's factual allegations fail to raise a right to relief "above the speculative level*." See Bell Atlantic Corp. v. Tombly*, 550 U.S. 544, 555 (2007). Accordingly, the Court grants Wingate's motion insofar as it moves to dismiss Bost's claim for failure to state a claim and dismisses Bost's counterclaim without prejudice.

### IV.  Conclusion

For the foregoing reasons, Wingate's motion for judgment on the pleadings will be granted in part and denied in part. Bost's counterclaim for breach of contract will be dismissed, without prejudice, under Federal Rule of Civil Procedure 12(b)(6). The Court denies Wingate's motion to the extent it seeks dismissal of Bost's counterclaim for lack of standing. An accompanying Order shall follow.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**